J-S13030-15

2015 PA Super 204

| | |
|---|---|
| IN RE: S.S.W., DOB 11/3/2010<br>IN RE: S.F.W., DOB 9/27/2012 | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| APPEAL OF: S.W. NOW S.P.W. AND<br>M.J.W. | |
| | No. 1726 WDA 2014 |

Appeal from the Order October 6, 2014
In the Court of Common Pleas of Somerset County
Orphans' Court at No(s): 15 Adoption 2014
15A Adoption 2014

BEFORE:  BENDER, P.J.E., MUNDY, J., and STABILE, J.

DISSENTING STATEMENT BY MUNDY, J.:          **FILED SEPTEMBER 24, 2015**

I respectfully dissent from the learned Majority's decision to affirm the orphans' court's order denying Mother and Stepfather's petition to terminate Father's parental rights.  In my view, Mother and Stepfather met their burden in this case.

As noted by the Majority, our cases require "[a] parent [to] utilize all available resources to preserve the parental relationship, and [to] exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship."  **In re B.,N.M.**, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citation omitted); **see also, e.g.**, **In re Adoption of S.P.**, 47 A.3d 817, 828 (Pa. 2012) (stating that a parent has "a duty to utilize available resources to continue a

relationship with his or her child[]"). The Majority rests its conclusion on the proposition that all of the orphans' court's findings and credibility determinations are supported by the record. Majority Opinion at 6-9. In my view, even accepting all of the orphans' court's findings of fact and credibility determinations, its **legal** conclusion that they amounted to "reasonable firmness" under Section 2511(a)(1) was in error.

As the Majority observes, the orphans' court found it significant that, in a period of three weeks during January 2013, Father "underwent an extremely difficult time in his life when everything was turned upside down, and he was, for the most part, on his own to sort out all that had transpired."[1] Orphans' Court Opinion, 11/13/14, at 11. However, this does not alter the legal conclusion that Father failed to exercise reasonable firmness in resisting the obstacles to maintaining his relationship with the Children. **See B.,N.M.**, **supra**. Notably, the obstacles stemmed from

_____

[1] In addition to the facts surrounding the PFA action, the orphans' court found Father underwent a difficult time in January 2013 for the following reasons. Mother filed a criminal complaint against him for simple assault arising from the argument that resulted in the PFA order. Orphans' Court Opinion, 11/13/14, at 11, Finding of Fact ¶ 14. Mother's father filed a criminal complaint against him for crimes alleging the conversion of funds from the nonprofit company owned by Mother's father where Father had worked. **Id.** at 11, Findings of Fact ¶¶ 7, 27-28. Father's employment at the nonprofit was terminated. **Id.** at 11, Finding of Fact ¶ 16. Father voluntarily admitted himself for two days to Somerset Hospital for psychological treatment. **Id.** at 11, Findings of Fact ¶¶ 10-12. Finally, Mother filed a divorce and child custody action against him. **Id.** at 11, Findings of Fact ¶¶ 20, 23.

Father's actions that resulted in the PFA order. Thereafter, Father made a choice not to participate in the custody action filed by Mother or to initiate his own action. In addition, Father did not attend the PFA extension hearing on December 12, 2013, essentially giving up on his affirmative duty to the Children. Father did not request the orphans' court to appoint counsel or inform the orphans' court that he was not able to appear for the extension hearing. N.T., 10/3/14, at 81. Father also did not request a continuance of the extension hearing. *Id.* at 69. Further, Father did not secure an attorney for the custody action, nor did he participate in the custody action because he believed he could not do so without a lawyer. *Id.* at 49, 77. Father testified that he intentionally declined to seek financial help from family or friends to secure an attorney.[2] *Id.* at 70.

Although we may be sympathetic to Father, Section 2511(a)(1) does not contain an "extremely difficult time" exception. Orphans' Court Opinion, 11/13/14, at 11. The law requires a parent to attempt to overcome obstacles placed in his or her path. ***B., N.M.***, ***supra***. Father has failed in this regard, even accepting all of the orphans' court's findings and credibility determinations. As the guardian *ad litem* stated to the orphans' court, "part of performing your parental duties, when you feel you are subject to an

---

[2] Although Father satisfied his child support obligation, it is well settled that the performance of parental duties "encompasses more than a financial obligation." ***B., N.M.***, ***supra*** (citation omitted).

unjust PFA perhaps, part of performing your parental duties is to come in here, to come in here and seek custody, to show up, and none of that happened."  N.T., 10/3/14, at 102-103.  In my view, reasonable firmness requires such action.  I would therefore conclude that Mother and Stepfather met their burden under Section 2511(a)(1).

Based on the foregoing, I conclude the orphans' court abused its discretion when it denied the petition to involuntarily terminate Father's parental rights pursuant to Section 2511(a)(1) and (b).[3]  Accordingly, I would reverse the October 6, 2014 order and instruct the orphans' court on remand to enter a decree involuntarily terminating Father's parental rights. I respectfully dissent.

_____

[3] Because the Majority disposes of Mother and Stepfather's appeal on Section 2511(a) grounds, any discussion of Section 2511(b) would be moot. However, I note that I agree with the orphans' court when it found that, with respect to the younger child, S.F.W., she was "born only three months before the separation, [and] it is doubtful that any bond existed between Father and the child which would be harmful to sever should [termination] be granted."  Orphans' Court Opinion, 11/13/14, at 12-13.  However, I disagree with the orphans' court when it concluded with respect to the older child, S.S.W., that she "would have been over two years of age at the time of separation and would certainly have some theoretical bond with Father, the nature of which was not explored by either party."  *Id.* at 13.  Here, Mother testified that S.S.W. does not ask about Father and does not know him.  N.T., 10/3/14, at 20-21.  Mother also testified that Stepfather was the "only male role model in their life right now … and was [a] very hands-on [parent.]"  *Id.* at 18-19.  Therefore, I would conclude the record demonstrates that terminating Father's parental rights would serve the needs and welfare of the Children pursuant to Section 2511(b).